**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**DENEILO BRADSHAW,**

   **Petitioner,**

**vs.**             **Case No. 4:12cv394-RH/CAS**

**JULIE L. JONES, Secretary,
Florida Department of Corrections,[1]**

   **Respondent.**

            **/**

## REPORT AND RECOMMENDATION TO DENY § 2254 PETITION

On August 6, 2012, Petitioner Deneilo Bradshaw, proceeding pro se, filed a

petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Doc. 1.  On June 27,

2013, Respondent filed an answer, with exhibits.  Doc. 14.  Petitioner filed a reply on

July 15, 2013.  Doc. 16.

The matter was referred to the undersigned United States Magistrate Judge for

report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida

Local Rule 72.2(B).  After careful consideration of all issues raised, the undersigned has

---

[1]The Clerk of Court shall substitute Julie L. Jones as Secretary of the Florida Department of Corrections in place of Michael D. Crews, who had replaced Kenneth S. Tucker in December 2012.  Julie Jones became Secretary on January 5, 2015, and shall be automatically substituted pursuant to Federal Rule of Civil Procedure 25(d).

determined that no evidentiary hearing is required for disposition of this matter.  *See*

Rule 8(a), R. Gov. § 2254 Cases in U.S. Dist. Cts.  For the reasons stated herein, the

pleadings and attachments before the Court show that Petitioner is not entitled to

federal habeas relief, and the § 2254 petition should be denied.

### State Court Proceedings

By grand jury indictment filed August 1, 2008, in the Second Judicial Circuit,

Leon County, in case number 08-CF-3301, Petitioner Deneilo Bradshaw was charged

with three counts in connection with events that took place on May 7, 2008:

> (1) first degree murder (victim Rachel Hoffman), a capital felony, in
> violation of section 782.04(1)(a)1., Florida Statutes;

> (2) armed robbery with a firearm (victim Rachel Hoffman), a life felony, in
> violation of sections 775.087 and 812.13(2)(a), Florida Statutes;

> (3) possession of a firearm by a convicted felon, a second degree felony,
> in violation of section 790.23(1)(a), Florida Statutes.

Doc. 14 Ex. A at 15-17.  Bradshaw proceeded to a jury trial on Counts 1 and 2,

beginning December 7, 2009.  *Id.* Ex. B (trial transcript).  Bradshaw did not testify at

trial.  *See id.* at 923.  On December 15, 2009, the case went to the jury and the jury

began its deliberations.  *Id.* at 1111.  On December 17, 2009, the jury reached its

verdict, finding Bradshaw guilty on Count 1 as charged and guilty of the lesser included

offense of robbery on Count 2.  *Id.* at 1193-94, 1202.  On December 18, 2009, the jury

returned its sentence recommendation of life imprisonment without the possibility of

parole.  *Id.* at 1210-11.  Bradshaw then entered an open no contest plea to the severed

charge (Count 3) of possession of a firearm by a convicted felon; the trial judge found,

and defense counsel stipulated to, a factual basis for the plea.  *Id.* at 1214-15, 1220-21.

The judge then adjudicated Bradshaw guilty and sentenced him to life in prison on

Count 1, and concurrent sentences of fifteen (15) years in prison on Counts 2 and 3.

Doc. 14 Ex. A at 462-74; Ex. B at 1221-24 (sentencing transcript).

Bradshaw appealed his judgment and sentence to the First District Court of

Appeal (DCA), assigned case number 1D10-0085.  Doc. 14 Ex. A at 71-73, Ex. G.

Bradshaw raised four points on appeal.  Doc. 14 Ex. C at ii.  The State filed an answer

brief.  *Id.* Ex. D.  Bradshaw filed a reply brief.  *Id.* Ex. E.  The First DCA affirmed the

case per curiam without a written opinion on April 26, 2011.  *Id.* Ex. F; <u>Bradshaw v.

State</u>, 64 So. 3d 680 (Fla. 1st DCA 2011) (table).  Bradshaw filed motions for rehearing,

rehearing en banc, and a written opinion as well as an amended motion for rehearing en

banc, all of which the court denied.  Doc. 14 Exs. G (motion), H (order).

On May 17, 2012, Bradshaw filed in the First DCA a petition for writ of habeas

corpus alleging ineffective assistance of appellate counsel, assigned case number

1D12-2579.  *Id.* Ex. I.  On June 7, 2012, the First DCA issued a written opinion stating

only, "The petition alleging ineffective assistance of appellate counsel is denied on the

merits."  *Id.* Ex. J; <u>Bradshaw v. State</u>, 93 So. 3d 1014 (Fla. 1st DCA 2012) (table).  On

June 11, 2012, Bradshaw filed a motion for leave to amend the petition to include

grounds that counsel was ineffective for failing to raise claims concerning closing

arguments.  Doc. 14 Ex. K.  By order dated June 28, 2012, the court denied the motion

to amend.  *Id.* Ex. L.  Bradshaw filed a motion for rehearing, which the court denied on

July 20, 2012. *Id.* Exs. M (motion), N (order).

As indicated above, on August 6, 2012, Bradshaw filed a § 2254 petition in this

Court.  Doc. 1.  Bradshaw raises two grounds, both of which allege ineffective

assistance of counsel (IAC) in his direct appeal:

> (1) IAC – Appellate counsel failed to argue the trial court's acceptance of plea and conviction on Count 3 violated prohibition against Double Jeopardy.  Doc. 1 at 5-6.

> (2) IAC – Appellate counsel failed to present point on appeal challenging numerous egregious, unobjected-to comments by the prosecutor during closing argument which constituted fundamental error.  *Id*. at 6-13.  In the alternative, Bradshaw presents this as a free-standing claim of fundamental error.  *Id*. at 6.

Respondent has filed an answer with exhibits.  Doc. 14.  Petitioner has filed a reply.

Doc. 16.

## Analysis

Pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective

Death Penalty Act of 1996 (AEDPA), federal courts may grant habeas corpus relief for

persons in state custody.  Section 2254(d) provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  *See* <u>Williams v. Taylor</u>, 529 U.S. 362 (2000); <u>Gill v. Mecusker</u>, 633 F.3d 1272 (11th Cir. 2011).

If a state prisoner's habeas petition "includes a claim that has been 'adjudicated on the merits in State court proceedings,' § 2254(d), an additional restriction applies." <u>Cullen v. Pinholster</u>, 131 S.Ct. 1388, 1398 (2011).  The federal court may not grant relief unless the state court's adjudication of the claim:  (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  28 U.S.C. § 2254(d).   "This is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'"  <u>Cullen</u>, 131 S.Ct. at 1398 (quoting <u>Harrington v. Richter</u>, 131 S.Ct. 770, 786 (2011), and <u>Woodford v. Visciotti</u>, 537 U.S. 19, 24 (2002)).  This Court's review "is limited to the record that was before the state court that adjudicated the claim on the merits."  <u>Cullen</u>, 131 S.Ct. at 1388.

Relevant here, in <u>Strickland v. Washington</u>, the U.S. Supreme Court adopted a two-part test for IAC claims:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687.  To demonstrate ineffectiveness, a "defendant must show that counsel's performance fell below an objective standard of reasonableness."  *Id.* at 688. To demonstrate prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.*  For this Court's purposes, importantly, "[t]he question 'is not whether a federal court believes the state court's determination' under the Strickland standard 'was incorrect but whether that determination was unreasonable – a substantially higher threshold.'"  Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quoting Schiro v. Landrigan, 550 U.S. 465, 473 (2007)).  "And, because the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard."  *Id.*  It is a "doubly deferential judicial review that applies to a Strickland claim evaluated under the § 2254(d)(1) standard."  *Id.*

### Ground 1: IAC – Double Jeopardy

In his first ground, Petitioner Bradshaw asserts his appellate counsel rendered ineffective assistance by not raising a point in his direct appeal asserting as error, specifically a violation of the prohibition against double jeopardy, the trial court's acceptance of his plea and the resulting conviction on Count 3, the offense of possession of a firearm by a convicted felon.  Doc. 1 at 5-6.  Bradshaw asserts the jury's verdict of guilt as to the lesser included offense of simple robbery on Count 2 reflects its conclusion that he did not possess or use the firearm during the commission

of the charged offense of armed robbery and, therefore, "constituted an acquittal of possession of firearm which prohibited any further litigation of the severed offense." *Id*. Bradshaw indicates he raised this claim in his state petition for writ of habeas corpus, which the First DCA denied without explanation. *Id.* at 6.

As both Bradshaw and Respondent indicate, Bradshaw raised this ground as the only claim in his petition for habeas corpus filed in the First DCA. *Id.*; Doc. 14 at 58; *see* Doc. 14 Ex. I at 4-6. The First DCA denied the petition on the merits in a one-sentence opinion. Doc. 14 Ex. J. Nonetheless, the state court ruling is entitled to AEDPA deference and review is limited to the record before the state court. *See* 28 U.S.C. § 2254(d); Cullen, 131 S. Ct. at 1402; Richter, 131 S. Ct. at 784-85; Wright v. Sec'y of Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002).

Although Bradshaw alleges this ground in terms of a double jeopardy violation, he does not clearly explain his argument except to point out that the jury found, on Count 2, that he did not possess a firearm and, therefore, on that count, he was convicted only of simple robbery, rather than armed robbery as charged. The United States Supreme Court has explained that the Double Jeopardy Clause provides three separate constitutional protections:

> It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.

North Carolina v. Pearce, 395 U.S. 711, 717 (1969), *overruled on other grounds*, Alabama v. Smith, 490 U.S. 794 (1989) (concerning presumption of vindictiveness in

sentencing).  None of these protections were violated by Bradshaw's voluntary plea to and conviction for possession of a firearm by a convicted felon (Count 3).  "[T]he prohibition against double jeopardy does not prohibit multiple convictions and punishments where a defendant commits two or more distinct criminal acts."  Hayes v. State, 803 So. 2d 695 (Fla. 2001) (citing Blockburger v. United States, 284 U.S. 299, 302-04 (1932)).

        In particular, when Bradshaw entered his plea, the state court conducted a thorough inquiry, finding Bradshaw understood what he was doing, and concluding Bradshaw entered the plea freely and voluntarily.  Doc. 14 Ex. B at 1214-21.  The court found "there is a factual basis to sustain your plea, based on the evidence I have heard as well as my independent review of the probable cause arrest affidavit."  Id. at 1220-21.  Bradshaw's counsel stipulated to the factual basis.  Doc. 14 Ex. B at 1221.  See Blackledge v. Allison, 431 U.S. 63, 73-74 (1977) ("[T]he representations of the defendant, his lawyer, and the prosecutor at [the plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity.  The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible.").

        Moreover, as the trial court found, and as Respondent indicates, record evidence permits the conclusion that Bradshaw possessed the gun at some point.  Doc. 14 at 62-64.  Specifically, at trial, a witness (Amonda Daniels-Emanuel) testified that she took her

car to AQSI to have her windows tinted on May 5, 2008; when she left her car at AQSI, she had her .25 caliber firearm secured in the glove compartment.  Doc. 14 Ex. B at 80-86.  After she picked up her car, she checked the glove compartment and her gun was missing.  *Id.* at 84.  She returned to AQSI to ask about the gun and also filed a police report.  *Id.* at 86-87.  She identified her gun at trial (State's Exhibit 4).  *Id.* at 87.  It was the gun used to kill Rachel Hoffman.  *Id.* at 555-60 (trial testimony of Jeff Foggy, firearms expert); *see id.* 603-07 (trial testimony of Dr. Lisa Flannagan, medical examiner).

Bradshaw worked at AQSI as did his co-defendant, Andrea Green; however, Green was not at work on May 5, 2008, and Bradshaw was, as testified to at trial by the manager and owner of AQSI (Travis Keels).  *Id.* 698-700, 705.  Bradshaw worked on the car from which the gun was stolen.  *Id.* at 708.

Another witness (Julius Hutchins) testified at trial that he worked at AQSI in May 2008 and was present when the police responded to the report of the stolen gun.  *Id.* at 90-94.  He testified the officers "talked to everybody who worked there."  *Id.* at 94.  He noticed that Bradshaw "acted like he had a worry or something on his face," rather than as his usual "up-lifted happy guy with a smile on his face."  *Id.*  He testified that Bradshaw also went to the passenger side of his vehicle, looked inside, rolled up his windows, and locked the doors.  *Id.* at 94-95.  He testified: "I seen him like go inside [his vehicle], like he was reaching under the seat, something like that.  Then he went over and locked the door and then locked the other door and rolled the windows up."  *Id.* at 95.

Ryan Pender, an investigator with the Tallahassee Police Department in May 2008, testified that Rachel Hoffman, working as a confidential informant, went to AQSI on May 5, 2008, to try to talk with Green and ended up talking instead with Bradshaw because Green was not there that day. *Id.* at 100-111. Hoffman was outfitted with listening devices and audio equipment that recorded her conversation with Bradshaw. *Id.* at 111-12. Their recorded conversation was played for the jury, during which Bradshaw agreed to try to get a gun, among other things, for Hoffman to purchase. *Id.* at 133-35; *see id.* at 112-44. Pender testified this recorded conversation ultimately led to the meeting involving Bradshaw, Green, and Hoffman that resulted in Hoffman's death. *Id.* at 144.

Based on the foregoing, sufficient record evident shows Bradshaw possessed the firearm at some point between the time it was removed from the vehicle at AQSI on May 5, 2008, and used to kill Hoffman on May 7, 2008, during the meeting involving Hoffman, Bradshaw, and Green. As also indicated above, in accepting the plea on Count 3, the trial court found, and Bradshaw's counsel stipulated to, the factual basis. Doc. 14 Ex. B at 1220-21. Because no double jeopardy violation occurred, appellate counsel was not ineffective for not raising the point on appeal.

Bradshaw has not shown the state court ruling rejecting this claim resulted in a decision that was either (1) contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court precedent, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d)(1)-(2). This ground should be denied.

### <u>Ground 2</u>: IAC – Prosecutor's Comments During Closing Arguments

In his second ground, Bradshaw asserts his appellate counsel rendered ineffective assistance not raising a point on appeal challenging egregious unobjected-to comments by the prosecutor during closing arguments.  Bradshaw argues these comments constituted fundamental error.  He asserts this claim was raised in his motion for rehearing he filed following the First DCA's denial of his habeas corpus petition. Doc. 1 at 13.  Bradshaw also indicates the defense theory at trial was that Bradshaw "had in fact orchestrated the drug deal and sale of the firearm between himself, his co-defendant, and the victim" but, when the transaction began, "his co-defendant Andrea Green learned the victim was an informant, freaked out and shot the victim to death, robbed her and then turned the gun on [Bradshaw] forcing him to help dispose of the body."  Doc. 1 at 7.

As Respondent indicates, the state court did not rule on the merits of this claim. Doc. 14 at 65.  Bradshaw has not properly exhausted this ground and it is now procedurally defaulted.  *See* <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 842 (1999) ("Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court.").  To obtain federal habeas review, Bradshaw must show cause for his failure to properly raise this claim and prejudice resulting therefrom.  *See, e.g.,* <u>Smith v. Jones</u>, 256 F.3d 1135, 1138 (11th Cir. 2001) ("[I]f the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is applicable.").  Bradshaw, in his reply

filed in this Court, asserts the IAC occurred during a stage of the proceeding (direct appeal) when he had a constitutional right to counsel and thus he has a valid excuse for not following the state procedural rule.  Doc. 16 at 7-8.  *See* Martinez v. Ryan, 132 S.Ct. 1309 (2012); Mize v. Hall, 532 F.3d 1184 (11th Cir. 2008).

Assuming Bradshaw has demonstrated cause and prejudice, this ground lacks merit.  To the extent Bradshaw argues ineffective assistance of appellate counsel based on appellate counsel's failure to raise a point on direct appeal concerning the prosecutor's comment in closing argument, Bradshaw has not met his burden to show ineffective assistance.  The United States Supreme Court has explained that counsel decides which issues to pursue on appeal and has no duty to raise every possible claim.  *See* Jones v. Barnes, 463 U.S. 745, 751-52 (1983).  Here, Bradshaw's trial counsel did not object during closing arguments and, therefore, any point on appeal challenging the prosecutor's closing would be affirmed absent the existence of fundamental error.  *See* Morton v. State, 789 So. 2d 324 (Fla. 2001) ("As a general rule, 'failing to raise a contemporaneous objection when improper closing argument comments are made waives any claim concerning such comments for appellate review.' . . . The exception to this general rule is where the unobjected-to comments rise to the level of fundamental error, which this Court has defined as 'error that 'reaches down into the validity of the trial itself to the extent that a verdict of guilty or jury recommendation of death could not have been obtained without the assistance of the alleged error.'" (quoting Brooks v. State, 762 So. 2d 872, 898-99 (Fla. 2000))).  As explained in detail below, the comments Bradshaw challenges did not amount to fundamental error.

Because no fundamental error occurred, appellate counsel had no support for challenging the comments on appeal, and Bradshaw cannot show any likelihood of a different result if appellate counsel had made the argument.

In Florida, both the State and the defense have wide latitude in closing arguments.  *See* Ford v. State, 802 So. 2d 1121, 1129 (Fla. 2001).  In federal habeas, "[t]he relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Darden v. Wainwright, 477 U.S. 168, 181 (1986) (quoting Donnelly v. DeChristoforo, 416 U.S. 637 (1974)).  The comments must have been improper and have rendered the trial fundamentally unfair.  United States v. Eyster, 948 F.2d 1196, 1206 (11th Cir. 1991). A review of this record does not indicate the prosecutor's comments, even if questionable, rose to such a level as to result in an unfair trial or deprivation of due process.  *See* Darden, 477 U.S. at 181 (finding that prosecutor's comments "undoubtedly were improper," but that was not enough for habeas corpus relief as the question was whether the comments "so infected the trial with unfairness as to make the resulting conviction a denial of due process").

In particular, the first comment by the prosecutor that Bradshaw challenges, in bold below, occurred near the end of a lengthy closing argument, when the prosecutor discusses reasonable doubt and conflicts in the evidence, having already recounted the evidence presented in the case:

> But if you recall on jury instruction I told you, you would not know everything that happened in the case.  We are not going to run down every little rabbit trail.  You may have some questions.  You may like to

know something.  If the question that you have is such that it leads to a reasonable doubt on one of those elements, your verdict would have to be not guilty.  And otherwise – to do otherwise, would be contrary to the law and would be a miscarriage of justice.

But, folks, if you have no reasonable doubt on one of the elements that the State has to prove, you may have some questions, you may think that something would be nice to know, but if it's not a reasonable doubt on one of the elements the State has to prove, then your verdict should be guilty.  And I submit to you it would be just as much a miscarriage of justice for you to find the defendant not guilty when the State has approach [sic] the case beyond a reasonable doubt as it would be to do the contrary.  All of us are depending upon you to make a wise and legal decision.

Were there some conflicts in the evidence?  Of course, there always are.  I submit to you that just reinforces that this case has people in it.  **I also submit it makes the case more credible.  If people got together and testified with surgical precision and everything was, you know, like you see on TV, then maybe they need to worry about, Gee, did they get together and rehearse it?  Are they trying to set somebody up?**

When you think about any inconsistencies, you know, did they smoke dope on the way to Orlando [after the murder] or did they not, who cares?  Does it really – does it really rise to the level of something that should result in a reasonable doubt on the elements.  I submit to you that it does not.

Ladies and gentlemen of the jury, I submit to you that the facts of this case are clear, the law is clear and your duty is clear.  The State has proven the defendant guilty as charged of first degree murder by both the premeditated theory and the felony murder theory and armed robbery, and I now ask you for that verdict.

Doc. 14 Ex. B at 1066-67 (emphasis added); *see* Doc. 1 at 8.  In this comment, the

prosecutor acknowledged conflicts existed in the evidence and argued this was because

the case involved people who clearly did not get together and rehearse a story.  It does

not appear improper or rise to the level of fundamental error.  *See, e.g.*, U.S. v. Morris,

568 F.2d 396, 401 (5th Cir. 1978) ("The purpose of summations is for the attorneys to assist the jury in analyzing, evaluating, and applying the evidence. . . . The assistance permitted includes counsel's right to state his contention as to the conclusions that the jury should raw from the evidence.  Therefore, an attorney's statements that indicate his opinion or knowledge of the case as theretofore presented before the court and jury are permissible if the attorney makes it clear that the conclusions he is urging are conclusions to be drawn from the evidence.").

The second comment, or set of comments, Bradshaw challenges, are in bold below and occurred during the beginning of the State's rebuttal to the defense closing argument:

> Members of the jury, Rachel Hoffman was much more than Rachel Red, the dead drug dealer.  Rachel Hoffman was a human being who deserves the same protection under the law that you would give any other citizen of this community.  No where in the law that the judge has read you this morning would you find an instruction that says it is a defense to murder of victim if the victim is a drug dealer.  We don't allow the murder of drug dealers or anyone else in the streets of our community.
>
> . . . .
>
> What we do know about Rachel Hoffman based on the May 5th audio recording that you've heard again today, is that Rachel Hoffman was not a violent person.  She says, repeats on that May 5th audio, **I'm just a little girl.  I'm just a little Jewish girl, be nice to me.**  I need something to protect me.  She is looking to buy a gun, at the request of the police in this case, and she doesn't know anything about guns, which is evident from that May 5th recording.
>
> She has got her drug lingo down, but she is completely naive about guns.  She says I want a pretty, unregistered gun.  That is like going up to a drug dealer and placing an order like this: Hello, sir.  I would like to by some marijuana and some cocaine.  A trafficking amount, if possible.

I mean, this tipped him off, a pretty gun, an unregistered gun.  She didn't know what she was doing.  She was naive when it came to that gun and when it came to dealing with this defendant.

She tells Bradshaw that she trusts his partner Andrea Green, because he has kind eyes and a nice smile.  That's the type of person that she was.  **She was a free spirit.  She trusted people.  She trusted the police to protect her and they failed her.**  And she trusted this defendant not to execute her and dump her body in a ditch, but that's what he did.

On May 5th when Ms. Hoffman rolls up to the car wash driving her fancy car in her bathing suit with her sleeping bag in the back, talking about camping and a music festival and a pretty unregistered gun, it tipped Mr. Bradshaw off.  This little girl is going to show up with $13,000 in cash.  **She is not a threat because she has a [sic] no gun.  She is trying to raise money to go to summer camp in Michigan.**  I mean, these men probably couldn't believe their good fortune.  This girl just fell into their lap and this money was going to fall right into their lap, too.

And on May 5th she put a mark on her back, folks.  On May 5th **she was a beautiful, vibrant young woman, 23 years old, a beloved daughter and friend**.  On May 5th she didn't have a care in the world.  She thought her life was like a scene from a movie.  It was fun being involved with the police and being a confidential informant.

She had no idea, not the foggiest clue, what kind of danger she was facing in this case, or that this small man with the island accent and his partner with the kind eyes were capable of robbing and murder[ing] her the way that they did two days later.

Doc. 14 Ex. B at 1096-98 (emphasis added); *see* Doc. 1 at 9.  As Bradshaw

acknowledges, the comments such as Hoffman being "just a little Jewish girl," trying to

go to summer camp in Michigan, and having no gun came into evidence by way of the

May 5th recorded conversation between him and Hoffman.  *See* Doc. 1 at 9; Doc. 14

Ex. B at 112-44 (portion of trial during which recorded conversation was played (a

portion of the recording was played again during closing, *id.* 1026-46)).  The comments

describing Hoffman as "a free spirt," trusting person, and "a beautiful, vibrant young

woman, 23 years old, a beloved daughter, and friend" fairly describe her, the victim in

this case, based on the recorded conversations and the photographs introduced as trial

exhibits. *See, e.g.,* Doc. 14 Ex. B at 115. Further, the comments appear to be an

attempt to counter the picture painted of Hoffman in the defense closing. *See, e.g., id.*

at 1075 (defense counsel, in closing argument: "You have a young lady, 23 years old,

for some time, we don't know how long, apparently, had been selling marijuana here in

town. . . .  She finally gets caught.  She gets put on probation.  She's going through a

drug program.  She flunked.  She has to get put back in it, because she is continuing to

be involved in the trade. . . . From the evidence you heard here, she learned how, to for

lack of a better term, and, again, no apologies coming from this lawyer, she learned how

to play the system."), 1077 (defense counsel describes attempt to set-up Green: "They

put into play this motion to get Green involved and they are going to try to talk about the

drugs, pills . . . . And who's going to get the benefit?  Rachel Hoffman is.  She's still out,

hadn't been put in jail, hadn't been violated.  So the system is working, as she sees it.").

   The third comment Bradshaw challenges, which occurred right after the portion

of the prosecutor's rebuttal quoted above, appears in bold below:

> **On May 5th she looked like this.  Two days later, she looked
> like that, a bullet lodged in her spine, one in her chest and three in
> the head, rotting on the side of the road, like a piece of garbage.**
> Whatever Rachel Hoffman did, whatever mistakes she made in her life,
> she did not deserve this.  **She did not deserve to feel the pain as those
> first bullets entering her body, destroying her organs and she did not
> deserve to feel the terror that she must have felt when that man, her
> killer, exited her car, walked around to the front of the vehicle and
> put those three bullets into her head.**

Doc. 14 Ex. B at 1098-99 (emphasis added).  Again, these comments are based on the

photographs introduced as trial exhibits, as well as the testimony of experts regarding

the manner in which Hoffman was killed.  *See id.* at 115, 462-65, 476, 567-71, 582-600,

603-07, 610.  Further, these comments also appear to be an attempt to counter the

defense portrayal of Hoffman.

 The fourth comment Bradshaw challenges, a phrase in bold below, occurred at

the end of the rebuttal as the prosecutor focused on the specific evidence pointing to

Bradshaw's guilt:

> Today is not about Andrea Green.  Andrea Green is guilty.  We will stipulate to that.  But today is not his trial.  Today is Mr. Bradshaw's day in court.  And the evidence and the law in this case point to Mr. Bradshaw.  Who is the one who did this deal?  Did Andrea Green set up this deal?  No, Mr. Bradshaw set up this deal.
>
> Who brought the gun that killed this woman?  There is the man right there.  Who bought the bleach?  Bradshaw.  Who helped bleach the car?  Bradshaw.  Who fled to Orlando?  Who bought jewelry and clothes with the money that he stole from this woman?  Deneilo Bradshaw did that.  Who woke up feeling like money?  Deneilo Bradshaw did.
>
> This man is responsible for the death of Rachel Hoffman **as if we had a video of him pulling the trigger**.  He is guilty of armed robbery.  He is guilty of first degree murder.  And there is only one verdict in this case that is the right verdict.  There is only one verdict in this case that is the just verdict.  There is only one verdict in this case that is the fair verdict and that verdict is guilty as charged.  Find him guilty.  Thank you.

Doc. 14 Ex. B at 1108-09 (emphasis added).  Again, these comments reflect the

evidence the State presented at trial and counter the defense position that Green alone

was responsible for the murder and robbery.  The comment "as if we had a video of him

pulling the trigger" may have referenced, or followed from, the State's presentation of a

video surveillance tape from a Jiffy Store in Perry (State's Exhibit 28), which depicted

Bradshaw buying bleach at the store after the murder, and a bleach bottle found near

Hoffman's car matched the lot numbers of bleach bottles at that store.  Doc. 14 Ex. B at

279, 282, 292-93, 409, 495-98.  Cf. Morris, 568 F.2d at 401 ("This Court has repeatedly

held . . . that an attorney may not say anything to the jury implying that evidence

supporting the attorney's position exists but has not been introduced in the trial. . . . He

may, as stated, urge a conclusion based on the evidence.").

　　　　The final comment, or set of comments, Bradshaw challenges also occurred

during the portion of the rebuttal (prior to the portion quoted in the paragraph

immediately above and after the portion quoted in the paragraph above that one), when

the prosecutor focused on the evidence pointing to Bradshaw's guilt, as part of the

criminal activity he took part in with Green:

> And pointing the finger at each other just isn't going to work at this case.  It's just not good enough to point at Mr. Green.  This is the work of two men.  You heard the testimony of Shawn Yao as to how she got down where she was.  She wasn't rolled.  She wasn't dragged.  You can't tell me that one man lobs the deadweight of Rachel Hoffman over the side of that ravine.  Two men, two men did this.  Two men are responsible for this and Deneilo Bradshaw is one of them.
>
> **Now, the State has done its job.  And now it's time for you to do yours.**  You swore an oath to follow the law in this case, even if you don't like the law.  You may think it doesn't seem fair, one guy shot her and one didn't.  Well, it doesn't matter.  The law says it doesn't matter. If one guy was in for the initial plan and assist in the crime in some way, then he is just as guilty as the triggerman. . . .
>
> How do we know that this defendant is guilty of first degree murder?  Well, we know Rachel Hoffman's killer committed first degree murder.  There is no doubt about that.  He was in the passenger seat or just outside of the passenger door of her vehicle when he fired the first two

shots.  He then had time to reflect on the fact that he was going to kill her as he walked around to her left side.

He had time to reflect when the gun jammed, not once, but twice, as he racked that slide, again, again and again, firing those bullets into the head of this young woman.  Not only did he have ample time to reflect on the impending death of Rachel Hoffman, but unfortunately so did she.  And there is only one reason to fire three shots into somebody's head and that is because you want them dead and that was exactly what was accomplished here.

So who was this gunman?  Was it the defendant?  Maybe it was.  It was his gun.  He stole it.  He was in the passenger seat of the BMW so it make more sense for him to jump out and get into her car to do this deal, this robbery.  He drove the body, which suggested it was robbery.  It was his problem.

Now, the truth is we will never know, but you've heard a lot about Mr. Green shot her, some snitches have come in from the jail to say, Oh, well, he brags about it at the jail. . . .

Well, the truth is we just don't know, and we told you that from the outset and that's what makes this case so tough.  You don't know who did it.  You have to look at all of the evidence, all of the circumstances surrounding the case to make a determination about who is involved in it.  Who was responsible?

So, if we can't prove who shot her, how can we ask you to convict him of first degree murder?  Well, as you know, and you are hearing this for a third or fourth time now, there are two ways to prove first degree murder.  Premeditated first degree murder, which we know the killer did in this case as I've just described, and felony murder.

Now, you must decide under the felony murder theory if Mr. Bradshaw is, at a minimum, a principal in a robbery in this case, a principal to the murder.  He set up the deal, folks.  He set this up.  It's on tape.  He provided the gun.  He left with the money in her car and she left dead.  That's a robbery.  That's a murder.  And he is all over this case.

. . . .

**Now, when you go back into that jury room, and Mr. Allman already talked about this a little bit, there could be a tendency to**

> **think, Gosh, you know, this was weighing on me. I don't know if he pulled the trigger or not. So, I just hate to convict him of first degree murder. Why don't we do second? Why don't we do manslaughter? Let's do one of these lesser included offenses. Do not do that. This was a first degree murder. The question is, is he a principal or isn't he a principal? Each of you has taken an oath in this case to follow the law, whether you like it or not. And that is all we're asking you to do.**

Doc. 14 Ex. B at 1099-1107 (emphasis added). Again, these comments reflect the evidence the State presented at trial. The prosecutor permissibly urged the jury to find Bradshaw guilty of the charged crimes (rather than the lesser included offenses) based on the evidence presented, and appropriately asks the jury to follow the law and do the job the jury is sworn to do (determine the credibility of the witnesses' testimony, evaluate the evidence presented, and determine, as the finder of fact, what happened in this case). *See, e.g.*, Morris, 568 U.S. at 401 (explaining, in closing argument, prosecutor "is expected to perform as an advocate, and it is not improper for him to urge upon the jury that his side of the issue be found to have been established beyond question (though objectivity might demand some less favorable conclusion)").

This Court's review of the record does not indicate the prosecutor's comments, even if questionable, rose to such a level as to result in an unfair trial or deprivation of due process. *See* Darden, 477 U.S. 168, 181 (1986); Eyster, 948 F.2d at 1206; *see also* Tucker v. Kemp, 802 F.2d 1293, 1296 (11th Cir. 1986) ("If a reviewing court is confident that, absent the improper remarks, the jury's decision would have been no different, the proceeding cannot be said to have been fundamentally unfair."). Bradshaw has not shown the state courts' rulings rejecting this claim resulted in a

decision that was either (1) contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court precedent, or (2) based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  *See* 28 U.S.C. § 2254(d)(1)-(2).  This ground should be denied.

## Conclusion

Based on the foregoing, Petitioner Deneilo Bradshaw is not entitled to federal habeas relief.  The § 2254 petition (Doc. 1) should be denied.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  Rule 11(b) provides that a timely notice of appeal must still be filed, even if the court issues a certificate of appealability.

Petitioner fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (explaining substantial showing) (citation omitted).  Therefore, the Court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  The parties shall make any argument as to whether a certificate should issue by objections to this report and recommendation.

Leave to appeal in forma pauperis should also be denied.  *See* Fed. R. App. P. 24(a)(3)(A) (providing that before or after notice of appeal is filed, the court may certify appeal is not in good faith or party is not otherwise entitled to appeal in forma pauperis).

### Recommendation

It is therefore respectfully **RECOMMENDED** that the Court **DENY** Petitioner Bradshaw's § 2254 petition (Doc. 1).  It is further **RECOMMENDED** that a certificate of appealability be **DENIED** and that leave to appeal in forma pauperis be **DENIED**.  The Clerk shall substitute Julie L. Jones as Respondent.

**IN CHAMBERS** at Tallahassee, Florida, on January 16, 2015.

S/  Charles A. Stampelos
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**